IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:18CR351 |
| vs. | FINDINGS AND RECOMMENDATION |
| VALENTINE YEPEZ, | |
| Defendant. | |

    This matter is before the Court on the Motion to Suppress and Request for Hearing (Filing No. 19) filed by Defendant, Valentine Yepez. Defendant filed a brief in support of the motion (Filing No. 20) and the government filed a brief in opposition (Filing No. 24).

    The Court held an evidentiary hearing on the motion on April 9, 2019. The government was represented by Assistant United States Attorney, Patrick McGee. Defendant was present with his attorney, Jason Troia. Omaha Police Officer Jeffrey Vaughn ("Officer Vaughn") testified on behalf of the government. The Court received into evidence, without objection, Exhibit 1 offered by the government. A transcript (TR.) of the hearing was prepared and filed on April 16, 2019. (Filing No. 32). This matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that Defendant's motion be granted.

## BACKGROUND

    On a sunny and clear day at approximately 9:51 a.m. on October 29, 2019, Officer Vaughn was patrolling Interstate 80 for criminal interdiction purposes when he initiated a traffic stop of a white Honda Civic driven by Defendant for the traffic violation of following too closely. (TR. 6-10). Officer Vaughn testified that his cruiser camera video, received into evidence at Exhibit 1, depicts the traffic violation. (TR. 9, 11).

    Officer Vaughn testified regarding how he determines whether a vehicle is following too closely. According to Officer Vaughn, there are several ways to visually estimate a vehicle's distance from a vehicle in front of it, including using visual landmarks or counting distance markers such as lane dividers. A white lane divider is 10 feet long and the distance between white lane dividers is 30 feet. Officer Vaughn testified that he starts his stopwatch when the rear tires of

the vehicle in front passes by a landmark, in this case a white lane divider, and stops the stopwatch when the front tires of the following vehicle pass by the same lane divider. Officer Vaughn testified that, in this case, he used lane dividers and a stopwatch on his iPhone to time Defendant's Honda getting as close as 0.8 seconds, or between 80 to 100 feet, from the semi-truck in front. Officer Vaughn testified that the State of Nebraska "recommends no closer than 3 seconds." (TR. 10-12). Officer Vaughn estimated that the Honda was traveling approximately 70 miles per hour by using his own GPS and the cruiser's speedometer and by comparing the Honda to other cars. (TR. 13).

After Officer Vaughn initiated the stop of the Honda, he made contact with the driver, Defendant, and asked for Defendant's driver's license and the vehicle's registration and insurance information. Defendant's responses to Officer Vaughn's questions about Defendant's itinerary and travel plans raised Officer Vaughn's suspicions, including Defendant's statement that he was from California but was driving his brother's car with Arizona license plates to Sioux City, Iowa. Defendant mispronounced Sioux City as "Siouxcox" or "Seacox," even though he indicated he had been there several times before and had an aunt and uncle that lived there. Defendant also made inconsistent statements regarding the length and purpose of his trip and did not have an address or phone number for the aunt and uncle he stated he was on his way to visit. (TR. 14-20, 23-24). Officer Vaughn's data check revealed that Defendant had previously been arrested for possessing a weapon in a motor vehicle, had multiple arrests for possession of a controlled substance, and had an expired driver's license. (TR. 21-22).

Officer Vaughn wrote Defendant a warning for following too close and for having an expired driver's license, returned his documents, and asked if Defendant would answer additional questions. Defendant agreed. (TR. 28-29). Defendant denied Officer Vaughn's request for consent to search the vehicle and for consent to run a drug dog around his vehicle, at which point Officer Vaughn told Defendant he was being detained. (TR. 32-33). Officer Vaughn's drug canine was walked around Defendant's vehicle and indicated to the presence of the odor of narcotics. Officer Vaughn searched Defendant's vehicle and recovered methamphetamine. (TR. 33-34).

Defendant filed the instant motion to suppress any statements and evidence seized from the traffic stop, arguing that such evidence was the fruit of an unlawful stop and detention. Specifically, Defendant contends that Officer Vaughn did not have reasonable suspicion or

probable cause to make the initial stop and did not develop reasonable suspicion to continue to detain Defendant after the mission of the traffic stop was completed. (Filing No. 19).

## ANALYSIS

A traffic stop is a "seizure" under the Fourth Amendment and must be supported by probable cause or reasonable suspicion. *United States v. Gordon*, 741 F.3d 872, 876 (8th Cir. 2013). Probable cause for a traffic stop exists "[a]s long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law." *Gordon*, 741 F.3d at 876 (alteration in original)(quoting *United States Coney*, 456 F.3d 850, 856 (8th Cir. 2006)). This is true even when the traffic violation is minor and the stop is simply "a pretext for other investigation." *United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008).

Officer Vaughn testified he stopped Defendant for following a semi-truck too closely. Nebraska law provides that a driver "shall not follow another vehicle more closely than is reasonable and prudent[.]" Neb. Rev. Stat. § 60-6,140(1). The statute does not explicitly define what is "reasonable and prudent," although the Eighth Circuit has recognized that under Nebraska law, "[t]he two-second rule . . . is a 'widely used rule of thumb that accounts for the speed of traffic' and is an appropriate measurement of whether a trailing car is maintaining a reasonable and prudent distance." *United States v. Lopez*, 564 F.3d 1001, 1003 (8th Cir. 2009)(quoting *United States v. Andrews*, 454 F.3d 919, 921 (8th Cir. 2006)).

In this case, based on the video at Exhibit 1, the undersigned magistrate judge finds that no reasonable officer could conclude that Defendant was travelling at an objectively unsafe distance behind the car in front of him in violation of Neb. Rev. Stat. § 60-6,140(1). First, although Officer Vaughn testified that he used his iPhone stopwatch to measure Defendant traveling 0.8 seconds from the rear tires of the semi-truck with a trailing distance of anywhere from 80 to 100 feet, review of the video clearly fails to support Officer Vaughn's version of events. A careful review of the video shows that Officer Vaughn was holding, but not viewing his iPhone, and that any use of his iPhone stopwatch concluded at the timestamp 9:49:57. (Ex. 1 at 9:49:52-58). Using a roadway sign as a landmark during the time that Officer Vaughn used his iPhone as a stopwatch, the front of Defendant's vehicle actually was no less than two seconds behind the semi-truck, approaching the roadway sign at the timestamp 9:49:59. Also contrary to Officer Vaughn's testimony, the video demonstrates that the vehicles were travelling at approximately 63-64 miles

per hour, not 70 miles per hour, (Ex. 1 at 9:50:9-10), and the rear of the semi-truck passed by an overhead traffic sign at the exit at least two seconds before the front of the vehicle driven by Defendant approached the same overhead traffic sign. (Ex. 1 at 9:50:13-15). In fact, at no point during the video—which Officer Vaughn testified depicts the traffic violation—could the undersigned magistrate judge find that Defendant's Honda was traveling less than two seconds behind the semi-truck, or anywhere close to the 0.8 seconds cited by Officer Vaughn. Nor could the undersigned magistrate judge find a time when Defendant's Honda was anywhere close to 80 to 100 feet behind the semi-truck using Officer's Vaughn's stated method of measuring lane dividers and distance between lane dividers. See *United States v. Polite*, 910 F.3d 384, 388 (8th Cir. 2018)(instructing a court to set aside an officer's testimony that is "clearly incredible and implausible.").

It is true that the question is not whether a traffic violation actually occurred, but is instead whether a reasonable officer would have believed that a traffic violation had occurred. See *Gordon*, 741 F.3d at 876. And it is also true that "[t]he determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999). This does not change the undersigned magistrate judge's conclusion. Nothing about the circumstances depicted on the video suggests that Defendant at any point was following the semi-truck at an objectively imprudent distance; it was a sunny and clear day, visibility on the interstate was good, traffic did not appear particularly heavy, the "roadways were clear," and Defendant was traveling at the same speed as the flow of traffic and was not negotiating any turns in the straight interstate. No reasonable officer would have believed that the traffic violation of following too closely had been observed under these conditions.[1] Cf. *United States v. Poulack*, 82 F. Supp. 2d 1024, 1027 (D. Neb. 1999)(probable cause supported stop of vehicle traveling one car-length behind another vehicle for one-third to one-half mile on the interstate); *United States v. Andrews*, 454 F.3d 919, 922 (8th Cir. 2006)(probable cause supported stop where vehicle was traveling 74 miles per hour on the interstate and was approximately 1.55 seconds behind another vehicle in inclement weather); *United States v. Lopez*, 564 F.3d 1001, 1002 (8th Cir. 2009)(probable cause supported

---

[1] The Sixth Circuit has advised that "[t]he circumstances surrounding a stop for following too closely on an expressway within city limits should be examined carefully where there is a challenge based on a pretextual stop." *United States v. Huff*, 630 F. App'x 471, 477 (6th Cir. 2015)(citing *United States v. Barnes*, 19 F.3d 19 (Table), 1994 WL 75932, at *3 (6th Cir. 1994)).

4


stop where officer timed the defendant traveling 0.58 seconds behind a truck on the interstate). It is equally unreasonable to believe that a trained law enforcement officer like Officer Vaughn, who has conducted over 15,000 traffic stops in his 20-year career, (TR. 6, 8), could have reasonably been mistaken otherwise.

Officer Vaughn's duties are to engage in criminal interdiction by executing high volume traffic stops, (TR. 6), but these stops only pass constitutional muster if they are supported by reasonable suspicion or probable cause. This stop does not pass that test. In this case, any evidence and statements seized from Defendant were derivative from the warrantless traffic stop. Accordingly, the evidence obtained in this case is tainted as a result of such unlawful stop and should be suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963). Therefore, the undersigned magistrate judge will recommend that Defendant's Motion to Suppress be granted. Upon consideration,

**IT IS HEREBY RECOMMENDED** to United States District Court Chief Judge John M. Gerrard that Defendant's Motion to Suppress (Filing No. 19) be granted.

Dated this 14th day of May, 2019.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.